OPINION.
The defendant-appellant, Bryan Patton, appeals from his convictions for driving under the influence in violation of R.C. 4511.19(A)(1) and (A)(3). Patton pleaded no contest to the charges. In his single assignment, Patton argues that the trial court erred when it denied his motion to suppress. Specifically, Patton argues that the trial court could not have reasonably rejected part of the arresting officer's testimony as to why he had stopped him and yet still have found reasonable suspicion to justify the stop. We disagree and thus affirm.
TESTIMONY AT THE SUPPRESSION HEARING
On June 19, 1999, Officer Excell Walker was in a patrol vehicle at 3:30 a.m. on Atlantic Avenue in the Oakley section of Cincinnati. Directly behind him was another police cruiser driven by Officer Deron Hall. According to the testimony, the street, which had parking on both sides, was so narrow that it required cars passing in the opposite direction to slow considerably. Officer Walker described such maneuvering as "a very tight fit."
According to Officer Walker, he observed Patton's vehicle approaching and, realizing the narrow width of the street, stopped his vehicle. He testified that he then began to ponder how the two vehicles, his and Patton's, could successfully pass each other. According to Officer Walker, Patton ultimately stopped his vehicle, with the engine running, approximately ten feet in front of his cruiser. Although Officer Walker stated that he had had some concern over the proximity of Patton's car to the parked vehicles, Officer Walker testified specifically he had not observed any traffic violation. Similarly, Officer Hall, who assisted Officer Walker, testified that Patton did not violate any traffic laws despite driving his vehicle very close to the cars parked along the narrow street.
Walker testified that he then "ran the plate" of Patton's car. He recalled that he used the front license plate to do this. Questioned whether he could have first gotten out of his cruiser, walked around Patton's vehicle and run the number from the rear license plate, Officer Walker testified that he could not "recall" getting out of his cruiser until he had checked the front plate. According to Officer Walker, a report came back that the license plate was expired, and he then approached Patton's vehicle. Officer Walker stated that, after Patton rolled down the window, he informed him that he had an expired plate, which was a violation, and asked to see Patton's driver's license and proof of insurance. At that point, Walker testified, as the two men exchanged conversation, he noticed a strong smell of alcohol on Patton's breath, as well as a slurring of his speech and a wateriness about his eyes.
Officer Walker testified that he then went back to his police cruiser and checked Patton's driver's license on the computer to make sure that it was valid. When he returned to Patton's vehicle, Officer Walker requested that Patton step out of the car and submit to field sobriety tests, which he did. Based on Patton's performance, Officer Walker placed him under arrest for driving while under the influence, handcuffed him, read him his Miranda rights, and then escorted him to the back of his police cruiser. Officer Hall, who was assisting in the arrest, spoke to Patton's female passenger.
Thomas Wagner, a police officer with the city of Montgomery for ten years, testified that he had known Patton as a friend for eleven years. According to Officer Wagner, he was familiar with the vehicle Patton was driving that night, and he was absolutely certain that it did not have a front license plate. Officer Wagner testified that he had advised Patton on several occasions that it was a violation of state law to be operating the vehicle without a front license plate.
Patton testified that his vehicle, a 1994 Toyota Corolla, did not have a front license plate on June 19, 1998, and had not had a front license plate since the front bumper had been replaced in December of 1998. He stated that his friend, Officer Wagner, had advised him several times that it was a violation not to replace the front license plate. According to Patton, however, he did not do so, because when his car came back from being repaired, "it looked new and nice," and he did not want to "screw it up" with a front license plate.
THE TRIAL COURT'S FINDINGS
After reviewing the transcript of the suppression hearing, the trial court stated, "I don't have a doubt that the defendant in this case at the time of the stop did not have a front license plate. I make that factual finding." But the court also found that Officer Walker's recollection that he had obtained the license number from the front plate did not damage his credibility.
Rather than rejecting Officer Walker's testimony entirely, the court concluded that Officer Walker had simply remembered incorrectly when he testified that he checked the front plate before getting out of the cruiser. The court determined that, after Patton had stopped voluntarily, Officer Walker must have gotten out of the cruiser, walked around to the rear of Patton's car, observed the license plate, and then entered the number in the computer. After learning that the plate was expired, Officer Walker, the court found, had a reasonable suspicion to detain Patton. Further, based upon Officer Walker's subsequent observations while speaking to Patton about the expired plate, in addition to information gleaned from the field sobriety tests, the court determined that Officer Walker had developed probable cause to arrest him for driving while under the influence.
 ANALYSIS
In Ornelas v. United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657,1663, the United States Supreme Court held that "as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Such review entails a two-step inquiry. The first step, as articulated by the court in Ornelas, is actually not denovo, since it requires that we review the trial court's findings of historical fact "only for clear error, `giv[ing] due weight to inferences drawn from those facts by the trial court.'" Id. The second step involves what is purely a question of law and is genuinely de novo: the reviewing court is required to independently determine, without any deference to the trial court, whether the historical facts, viewed from the standpoint of an objectively reasonable officer, justified the detention. Id. at 696, 116 S.Ct. at 1661-1662.
Here, Patton challenges both the court's findings of historical fact and its legal conclusions. With regard to the historical facts, Patton contends that the trial court correctly determined that Officer Walker's testimony that he checked the front license plate of his vehicle could not possibly have been accurate since the car did not bear a front license plate. But, Patton contends, the trial court then committed clear error by attempting to rehabilitate Officer Walker's testimony by suggesting that he was the victim of a faulty memory and then creating its own factual scenario, unsupported by the record, to justify the stop. We disagree.
It is well settled that the trier of fact is not required to accept a witness's testimony completely, but may, rather, accept or reject it in whole or in part. Having found Officer Walker to be credible notwithstanding the absence of a front license plate, the trial court was entitled to infer that Officer Walker must have obtained the license number from the rear plate of Patton's vehicle. Indeed, not only was this inference reasonable, it was the only conclusion that the court could have reached. Having accepted Officer Walker as a truthful witness, and confronted with the impossibility of his testimony that he had obtained the number from the front plate, the court could have rationally found only that Officer Walker had forgotten that he had actually obtained the number from the rear of the vehicle, not from the front.
Furthermore, we find no basis to conclude that the court clearly erred when it determined, as a matter of historical fact, that Patton had been voluntarily stopped up until the time Officer Walker informed him of the expired plate. The testimony at the suppression hearing showed only that Officer Walker asked to see Patton's driver's license after he determined that the plate was expired. There was no testimony of anything more than a consensual stop prior to that time. Indeed, there was no testimony that Officer Walker had any contact with Patton until after he checked the license plate number on the computer. Although Patton testified, he limited his testimony to the existence, or, rather, nonexistence, of the front license plate. In other words, Patton did not offer any testimony to suggest that Officer Walker had restricted his freedom of movement in any manner prior to the time Officer Walker informed him that his license plate was expired. This being so, it was not clear error for the trial court to have concluded that Patton was voluntarily stopped up until Officer Walker had him roll down his window, told him of the expired plate, and then asked to see his driver's license.
Having found no clear error in the trial court's findings of historical fact, we move on to determine whether those facts, from the standpoint of a reasonably objective officer, justified the stop. In order to effectuate the stop in this case, Officer Walker had to have possessed "reasonable suspicion." Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868, 1880. As this court noted in State v. Ramey (1998),129 Ohio App.3d 409, 414, 717 N.E.2d 1153, 1156, "reasonable suspicion" is a term of art that connotes more than an "unparticularized suspicion" or "hunch." The question whether an officer possessed "reasonable suspicion" is determined by examining the totality of the circumstances.Id., citing United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690, 695.
If Officer Walker checked the license plate and found it to be expired, it cannot be seriously argued that he lacked an objective basis upon which to approach and detain Patton for the purpose of issuing him a citation. It should also be noted, parenthetically, that, with certain exceptions for motorcycles, mobile homes, dealer plates, and temporary tags, R.C. 4503.21 requires drivers of vehicles registered in this state to display both front and rear license plates. A violation of the statute is a minor misdemeanor. R.C. 4503.99. Thus, once Officer Walker viewed the rear plate and saw that the car was licensed in Ohio, and thus subject to R.C. 4503.21, he had evidence of a second violation to justify the detention of Patton. See State v. Richardson (1994),94 Ohio App.3d 501, 504, 641 N.E.2d 216, 218.
We hold, therefore, that the trial court did not clearly err in its findings of historical facts, and that, based on those facts, Officer Walker had an objective basis to effectuate a top. Following the stop, Officer Walker obtained further evidence that Patton was intoxicated, and was therefore justified in requiring that Patton perform a series of field sobriety tests, which provided the probable cause necessary to arrest him for driving under the influence. Accordingly, we find no merit in the assignment of error and thus affirm the trial court's judgment.
Winkler and SHANNON, JJ., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.